IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| **DEBORAH SIVULICH-BODDY,**<br><br>   Plaintiff,<br><br>vs.<br><br>**CLEARFIELD CITY, ET AL.,**<br><br>   Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 1:03CV21DAK |

This matter is before the court on Defendant Brad King's Motion for Summary Judgment, Defendant Brent Ward's Motion for Summary Judgment, Plaintiff's Motion to Strike Portions of Defendant King's and Ward's Summary Judgment Motions and Memoranda, Plaintiff's Motion to Strike Portions of Defendants' Summary Judgment Reply; Defendants' Motion to Strike Declarations of Lawrence Waggoner, Emily Bucevicius, and Ralph Jaramillo, and Defendants' Motion to Strike Surreply Portion of Plaintiff's Brief. The court held a hearing on the motions on July 10, 2007. At the hearing, Plaintiff was represented by Robert H. Wilde, Defendant King was represented by Judith D. Wolferts, and Defendant Ward was represented by Robert L. Stevens. The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties. The court has further considered the law and facts relevant to the motion. Now being fully advised, the court enters the following Memorandum Decision and Order.

**BACKGROUND**

Boddy has an equal protection claim and a hostile work environment claim based on gender discrimination.  The allegedly discriminatory conduct occurred from December 14, 1998 until June 3, 1999, a six-month period when Boddy was temporarily assigned to the Davis Metro Strike Force.  Boddy was a full-time police officer employed by the Clearfield Police Department.  From 1988 until 1994 or 1995, Boddy was a patrol officer.  She was then assigned as a school resource officer at a junior high school in Clearfield.

The Davis Metro Strike Force ("Strike Force") is a law enforcement entity created by an inter-local government agreement among most of the municipalities of Davis County for the purpose of drug interdiction.  The Strike Force is staffed by police officers from various municipalities who are assigned on a temporary basis.  The officers on the Strike Force were supposed to develop relationships with confidential informants and set up controlled buys of illegal drugs.   Defendant Brent Ward was assigned to the Strike Force from 1994 to 1999, was Assistant Supervisor of the Strike Force in 1995, and Supervisor from 1996 through 1999.  Defendant Brad King is a police officer for Layton City and was a member of the Strike Force for the last two months of Boddy's tenure.  In about mid-April 1999, Strike Force Commander and Interim Layton City Police Chief David Nance asked King to assist Ward at the Strike Force.  King continued his other duties at Layton and stopped in approximately one to two hours a week at the Strike Force to help with whatever Ward needed.  He was then to report back to Nance.

Defendants submitted evidence establishing that when Boddy was first assigned to the Strike Force several of the agents on the Strike Force thought it would be beneficial to have a female agent who could gain access to an entire new population of drug users.  Boddy

testified that she does not think that any of the non-supervisory Strike Force agents were biased against her because she is a woman. However, she submits a declaration from Ralph Jaramillo, a reserve Strike Force agent, which states that soon after Boddy was appointed to the Strike Force, Ward told the Strike Force agents that the "only reason this bitch is getting the position is because she's a f---ing woman." Jaramillo also claims that the outgoing Clearfield City officer on the Strike Force, Steve Swenson, told the other Strike Force agents that the only reason Boddy was getting the appointment was because she was "sleeping with a male superior officer."

Nonetheless, Boddy did not show up on the first two days of her assignment to the Strike Force because of a miscommunication. She stated that she was altering her appearance—changing her hair color and getting colored contact lenses. She received a written reprimand from the Clearfield City Police Department for being absent without authorization. Boddy admitted in her deposition that she did not tell anyone that she would not be showing up on her first day with the Strike Force. Boddy, however, claims that there was some confusion as to whether she was to start at the Strike Force on December 14th or December 16th. Boddy also claims that she used comp time for those two days to change her appearance and that in her previous position as a School Resources Officer nobody had ever questioned her use of comp time without notifying someone at the school in advance that she was going to do so.

In March of 1999, three months after Boddy joined the Strike Force, Defendant Ward met with Boddy about her performance on the Strike Force because she had not developed any confidential informants and had not used any money to facilitate a controlled buy. Ward had also received numerous complaints from other officers assigned to the Strike Force that

Boddy frequently left and did not stay in touch. Boddy contends that Ward did not criticize her job performance at this meeting. However, she admits that she could have had discussions with Ward prior to his meeting with her in March 1999, in which he complained to her about his not knowing where she was or what she was doing. She also testified in her deposition that the first week of March was when it first came to her knowledge that the Strike Force supervisors had a concern with her performance or attendance. She testified that at the meeting with Ward, "He asked me about the buy money, why I hadn't used any. He asked me about the CIs. And I actually agreed with him and said I needed to – I needed some help in how to develop those CIs."

Clearfield City Police Chief Sparks met with Ward at about this same time. Ward told Sparks that Boddy was hard to find, did not work well with others, and was not carrying her weight. Sparks told Ward that he wanted to see better supervision of Boddy by the Strike Force before he would consider reassigning her to her home agency. But, in March or early April of 1999, Sparks met with Boddy and put her on a six-week probationary status for the Strike Force assignment because she was not spending enough time at the office and not developing confidential informants.

The Strike Force kept statistics of cases as to which agent was the primary investigator for the case. Boddy states that in April of 1999, there were two males agents on the Strike Force who had fewer cases than she did. Tye Berger and Jeff Jensen had fewer total cases and Jensen had fewer narcotics cases.

King testified that many of his verbal reports to Nance included Boddy because she would fail to show up to work, miss training, disappear during shifts, and fail to assist other

4

agents with cases. King reviewed documentation that Ward had on Boddy's performance problems.

According to a fellow agent, King coined the term "Debbie case" to refer to an agent's work that resulted in a relatively small seizure. By using this phrase, King was criticizing Plaintiff even though others were doing similar work. This testimony is given by another agent, however, because King did not make these statements in front of Boddy.

Plaintiff, however, testified that she told fellow agents that because none of the other agents would answer her pages, she needed to ask her boyfriend, a Layton City police officer, to conduct surveillance with her. Plaintiff also claims that she had developed one confidential informant which she referred to the Salt Lake County Strike Force at the time she was removed and was trying to sign up several more.

The last act of allegedly discriminatory conduct asserted against King occurred in part on June 3, 1999, when he recommended to Sparks that Boddy be reassigned back to her home agency. On that day, Boddy was asked to meet with Commander Nance, Ward, and King. Ward told her that she was being removed from the Strike Force. Boddy claims that King told her at the meeting that she did not fit in and females did not make good Strike Force agents. She states that this meeting was the first time King or anyone else had ever made a remark about females not being good Strike Force agents. Nance and Ward testified that they never heard King make the alleged statement. Other than this one statement by King, Boddy testified that no other statement was made to her by any of the supervisors at the Strike Force that she thought was gender related.

Boddy further testified that she was directed to go and speak with Chief Sparks that same day and that she did so. Defendant Sparks testified that he made the decision to

5

reassign Boddy from the Task Force and only he had the authority to do it.  Boddy admits that Nance, Ward, and King did not have the authority to remove her as a Strike Force agent.

While Boddy disputes whether she developed a CI because she referred one to the Salt Lake Strike Force, she admits that she did not use any "buy money" allocated to her to purchase narcotics during the six-month period she was on the Strike Force.  She contends that she made three controlled buys using other agents' money.  She admits that statements regarding the development of CIs and using buy money for controlled buys were probably made to her at the meetings on June 3, 1999.  The reassignment was not a demotion and there was no loss of pay or benefits.  She was reassigned to patrol duties with the same hours.

Neither King nor Ward had authority to remove Boddy from the Strike Force assignment.  The EEOC dismissed Boddy's Title VII Charge of Discrimination against the Strike Force finding that it was not her employer as required by Title VII.

Nearly three years after she was reassigned from the Strike Force, on February 2, 2002, Boddy was terminated from the Clearfield City Police Department after an internal investigation into her conduct.  Sparks testified that there were complaints that she was slow to respond to calls because she did not want to be the first officer on the scene.  She also failed to return to a second call of domestic violence from one home and failed to follow orders of a supervisor on a SWAT callout.

Boddy's first Complaint in this matter, filed February 12, 2003, alleged a violation of Title VII against her employer Clearfield City.  Defendants Ward and King were not added until an Amended Complaint, filed August 20, 2004, in a second lawsuit filed on March 17, 2004 and assigned to Judge Cassell.  The second suit assigned to Judge Cassell was later consolidated into this action.

Boddy's allegation against Brent Ward claims he had an anti-female bias because he changed his approach to her when she was put on probation. Boddy testified that she did not know of Ward treating any other female officer in a biased manner. She also testified that she did not know of any information that would suggest that Ward has a dislike for female officers in general.

Boddy's claim against King is based on his alleged statement at the June 3, 1999 meeting that females do not make good Strike Force agents. Boddy's EEOC/UALD Charge of Discrimination, however, did not contain any reference to this statement. Her Charge of Discrimination mentioned only that she was told that she did not fit in and that she was removed as an agent without any specific facts or allegations. Sparks testified that she did not mention any kind of discrimination to him and he recalled only that she thought there were problems with due process. Boddy testified that the first time she mentioned the alleged statement regarding female agents was in 2003 to an investigator from the Department of Justice.

Boddy also claims that King exhibited animosity toward her because: (1) once when she asked him why she didn't have his pager number, he ripped out one of his business cards, wrote in on the back and tossed it to her; (2) once when she asked how he prosecuted juveniles he stated that there was some form and she should just go figure it out; and (3) he never spoke to her directly, never gave her advice or suggestions and she hardly ever saw him.

## DISCUSSION

### Defendant King's and Defendant Ward's Motions for Summary Judgment

Defendant King filed a Motion for Summary Judgment, arguing that Boddy's equal protection claim against him fails as a matter of law for several reasons: (1) the claim is barred by the four-year statute of limitations for § 1983 claims; (2) King is entitled to qualified immunity; (3) Boddy did not suffer an adverse employment action; (4) Boddy cannot name anyone similarly situated who has been treated differently; (5) Boddy cannot meet the standard for establishing a hostile environment; (6) Boddy cannot meet her burden of demonstrating that reporting her to Sparks was a pretext because it was done for a legitimate, non-discriminatory reason; (7) King did not make the ultimate decision to reassign Boddy to Clearfield City and had no control over Sparks' decision; and (8) Boddy cannot establish her ultimate burden of proving that she was the victim of intentional gender discrimination. Defendant Ward joined in King's Motion with respect to the statute of limitations and qualified immunity.

**1. Statute of Limitations**

Defendants assert that Boddy's claim against them is time barred by the four-year statute of limitations for § 1983 claims. In addition, Defendants contend that Rule 15(c)'s standards for naming new parties outside the limitations period are not satisfied.

Rule 15 allows relation back to add new parties outside the limitations period as follows: (c) an amendment of a pleading relates back to the date of the original pleading when:

> (1) relation back is permitted by the law that provides the statute of limitations to the action; or (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or

> occurrence set forth or attempted to be set forth in the original pleading; or (3) the amendment changes the party or the name of the party against whom the claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party brought in by amendment (A) has received such notice of the institution of the action that the party would not be prejudiced in maintaining a defense on the merits, and (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15(c).

Boddy filed two separate lawsuits in this matter. The first action was filed February 12, 2003, and named only Clearfield City. Boddy's second lawsuit was filed March 17, 2004, and was assigned to Judge Cassell. That case was also pled only against Clearfield City. The last act of alleged discrimination was June 3, 1999, which means that the limitation period ran on June 3, 2003. The Kimball case was filed February 12, 2003, whereas the Cassell case was filed March 17, 2004. Applying the four-year statute of limitations, only the Kimball lawsuit was filed within the limitation period. The Cassell case was time-barred at its inception. The Amended Complaint allowed in the Cassell case, which named King and Ward for the first time, was not filed until August 20, 2004. King and Ward were not added to the Kimball case until the amended Complaint filed June 17, 2005.

Boddy argues that Defendants have previously been heard on this defense in connection with the motion for leave to file a Fourth Amended Complaint and the court ruled against them. Therefore, Boddy claims that it is the law of the case that there is no statute of limitations bar to the action against Defendants. Defendants respond that it is proper for them to reassert the statute of limitations now that discovery has closed.

Rule 54(b) provides that "any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b). In *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981), the Tenth Circuit explained that

> When a court enunciates a rule of law in the course of a given case, the law of the case doctrine generally requires the court to adhere to the rule throughout the proceedings. 1B Moore's Federal Practice P 0.404(1) at 402-03. The rule is one of expedition, designed to bring about a quick resolution of disputes by preventing continued reargument of issues already decided. *Roberts v. Cooper*, 61 U.S. (20 How.) 467, 481, 15 L.Ed. 969 (1858); *White v. Murtha*, 377 F.2d 428, 431-32 (5th Cir. 1967). Unlike res judicata, the rule is not an "inexorable command," but is to be applied with good sense. *Murtha*, 377 F.2d at 431-32 . . . . When a lower court is convinced that an interlocutory ruling it has made is substantially erroneous, the only sensible thing to do is to set itself right to avoid subsequent reversal. *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1121 (10th Cir.), *cert. denied*, 444 U.S. 856, 100 S. Ct. 116, 62 L. Ed. 2d 75 (1979) . . . .  Courts have generally permitted a modification of the law of the case when substantially different, new evidence has been introduced, subsequent, contradictory controlling authority exists, or the original order is clearly erroneous. *See Fuhrman v. United States Steel Corp.*, 479 F.2d 489, 494 (6th Cir.), *cert. denied*, 414 U.S. 859, 94 S. Ct. 71, 38 L.Ed.2d 110 (1973); *Murtha*, 377 F.2d at 431-32.

The applicable case law requires that the Rule 15(c) standards must be satisfied before the expiration of the 120-day period following the filing of the original complaint. There is no evidence that King or Ward received notice of the lawsuits within 120 days of the filing of the original complaint in either the Cassell or Kimball cases. But there is also no evidence that Defendants did not know of Boddy's lawsuit. The parties dispute who has the burden of proof on this issue. Defendants argue that Plaintiff has the burden of demonstrating that she

10

met the standards of Rule 15(c), and Plaintiff asserts that Defendants have the burden of proof on their statute of limitations affirmative defense.

The first Complaint named only Clearfield City. Boddy argues that Defendants are not prejudiced in having to defend this lawsuit, because the Complaint, filed initially on February 12, 2003, mentioned each of the Defendants by name even if they were not listed as *per se* Defendants. But King and Ward are not employees of Clearfield City. This court's previous order with respect to the statute of limitations dealt with Clearfield City and Morton Sparks. Unlike King and Ward, Sparks was an employee of Clearfield City. And the sole claims in both lawsuits were Title VII discrimination claims that are asserted against one's employer. It is well settled in the Tenth Circuit that these claims cannot be brought against individuals. *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996). In *Haynes*, the Tenth Circuit recognized that "the language and structure of amended Title VII continue to reflect the legislative judgment that statutory liability is appropriately borne by employers, not individual supervisors." *Id.*

While there is some question regarding the notice King and Ward received with respect to Boddy's initial Complaint, the court concludes that even if they received notice of Boddy's lawsuit against Clearfield City, there was no reason for King or Ward to expect to be named as defendants in the case. Personal capacity suits against individual supervisors are inappropriate under Title VII. The court further concludes that it is prejudicial to require King and Ward to continue defending this lawsuit where the limitation period had expired over a year before a Complaint naming either of them was filed. Boddy cannot show that the Amended Complaint should relate back to allow the addition of King and Ward after the expiration of the limitations period.

Accordingly, the court concludes that Boddy's claims against King and Ward are time barred. Defendants' motions for summary judgment are, therefore, granted on this issue.

### 2. Qualified Immunity

Even if the claims are not time barred, Defendants also assert that they are entitled to qualified immunity. The first question to be decided for purposes of qualified immunity is whether or not a defendant violated a clearly established constitutional right. *Saucier v. Katz*, 121 S. Ct. 2151, 2156 (2001). For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected unless that very action in question has previously been held unlawful, but it is to say that in light of the pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Boddy argues that Defendants are not entitled to qualified immunity because material facts are in dispute as to whether Defendants discriminated against her on the basis of gender and condoned her all-male cohorts to do the same. It is clearly established that state actors could be liable under § 1983 for employment discrimination. *See Starrett v. Wadley*, 876 F.2d 808, 814-15 (10th Cir. 1989) (affirming judgment for female county employee victimized by gender-based conduct depriving her of equal protection).

Boddy's equal protection claim alleges that "[d]efendants' acts violated the plaintiff's rights . . . to equal treatment under and protection of the laws, to wit, to be free from gender discrimination in employment and a hostile work environment." Fourth Am. Compl. ¶ 79.

### A. Equal Protection Gender Discrimination

Boddy argues that there are material facts in dispute as to whether each of the Defendants discriminated against her by engineering her removal from the Strike Force. Defendants assert that Boddy cannot show that a constitutional right was violated and that the relevant law was clearly established at time of the alleged violation. Although Boddy argues that the law was clearly established when Defendants' acted, Defendants assert that the standard is whether the law was clearly established that a defendant could be liable for a gender-based equal protection violation when he was not employed by the governmental agency making the decision and the defendant had no authority to make the final decision regarding the plaintiff's assignment.

In *Randle v. City of Arizona,* 69 F.3d 441 (10th Cir. 1995), the Tenth Circuit addressed the issue of whether the alleged discriminatory actions were made by a final policymaker before addressing the substance of the plaintiff's discrimination claims under Section 1983 claim. *Id.* at 450. Similarly, the court concludes that it should address Defendants arguments regarding their authority to reassign Boddy before analyzing the elements of Boddy's § 1983 claims.

#### (1) Ultimate Decisionmaker

Defendants argue that any equal protection claim against them fails because they had no authority to assign Boddy back to Clearfield. In *Jennings v. City of Stillwater*, 383 F.3d 1199 (10th Cir. 2004), the Tenth Circuit noted that a Defendant cannot be liable for an equal protection violation unless the action complained of "had a concrete effect on her rights." *Id.* at 1212. The *Jennings* court dismissed an equal protection claim against two defendants because the defendants had not made the ultimate decision which was the subject of the

13

plaintiff's complaint. *Id.* The court explained that the plaintiff's "allegations of discrimination are directed not at the decisions by the ultimate decisionmaker, but at various actions of [officers]. . . . The problem is that the actions . . . even assuming they are every bit as improper, arbitrary, and discriminatory as Plaintiff alleges, were not final decisions; they were only steps in a process leading toward a final decision." *Id.*

Boddy has largely failed to address Defendants' argument that they did not have the authority to remove her from the Strike Force. It is undisputed that Defendants were not Clearfield employees. It is also undisputed that King and Ward had no authority to reassign Boddy from the Strike Force and that the decision was made by Sparks. Any recommendations that King and/or Ward made were only intermediary steps. Sparks' testimony that he reassigned Boddy because he thought that King and Ward would find some other way to have her reassigned does not negate the fact that Sparks made the decision. Plaintiff also claims that Sparks reassigned her out of concern for her safety. This evidence, however, demonstrates that he made the decision for his own reasons, not simply because King and Ward suggested that Boddy be reassigned. Even if the Board overseeing the Strike Force could reassign an officer to his or her home agency, that did not occur in this case and King and Ward would only be able to make recommendations to the Board as well. The evidence is undisputed that Sparks made the decision regarding Boddy's reassignment, and the court finds that he, not King or Ward, was the ultimate decisionmaker.

Because King and Ward did not have the authority to reassign Boddy, the court concludes that they cannot be liable to Boddy under her discrimination claim. Therefore, Defendants' motions for summary judgment are also granted on this ground.

### (2) Substance of Discrimination Claim

A disparate treatment claim requires proof of discriminatory intent or motive and is governed by the *McDonnell Douglas* framework. *See Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1315 (10th Cir.1999) (referring to the test set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. If she does, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. If the defendants can do that, the burden reverts to plaintiff to show the proffered reason was a pretext for discrimination. *See Apgar v. State,* 221 F.3d 1351, (10th Cir. 2000)

### (a) Prima Facie Case

Boddy contends that she has established a prima facie case of discrimination. She was in an identifiable class. Nearly six months into a twenty-four month assignment, she was removed by her own Police Chief, Morton Sparks. The parties dispute the reason for that removal. Defendants claim that Boddy was removed because of performance problems, whereas Plaintiff contends that she was removed out of a fear for her safety. Sparks also testified that if he had not removed her, he thought the Strike Force agents would have gone over his head and had it done some other way. Boddy also asserts that she was adversely affected by the reassignment because she had a career goal to advance into drug enforcement at the federal level and the Strike Force was a stepping stone for her.

Defendants contend that Boddy cannot establish a prima facie case against King and Ward because she cannot show an adverse employment action. An adverse employment action is an action such as firing, failing to promote, reassignment to a job needing less skill, change in pay, or significant change in benefits. *Stinnett v. Safeway Inc.*, 337 F.3d 1213,

1217 (10th Cir 2003).  In *Stinnett*, the court noted that "an employer always retains the right to reassign a temporarily assigned employee to a permanent position." *Id.*

In this case, Boddy's position on the Strike Force was a temporary assignment and Boddy's home agency merely reassigned her to her permanent position, where she would have returned in any event.  She did not lose pay or benefits and remained scheduled for the same shift hours that she had on the Strike Force.

Boddy asserts that she was adversely affected by the truncation of her assignment because she had a career goal to advance into drug enforcement at the federal level and the Strike Force was a stepping stone for that goal.  However, this is not evidence of an adverse employment action and is merely speculation with respect to the benefits of staying on the Strike Force longer.  Boddy's employer retained the right to reassign her to her permanent position at any time during her temporary assignment.  Therefore, the court concludes that Boddy has failed to prove an adverse action.

Boddy further asserts that the individual agents treated her less favorably than they treated each other.  She felt as though she was under a microscope like no one else had been before.  A plaintiff bringing an equal protection claim based on membership of a protected class is required to "show intentional discrimination against him because of his membership in a protected class, not merely that he was treated unfairly as an individual." *Huebschen v. Department of Health & Soc. Servs.*, 716 F.2d 1167, 1171 (7th Cir. 1983).  "Absent a discriminatory motive or intent, [the] challenged conduct would not violate clearly established law." *Lewis v. City of Ft. Collins*, 903 F.2d 752, 755 & n.1 (10th Cir. 1990).

Just because a plaintiff may be disliked based on their personality or conduct, there is no evidence of discrimination. Boddy has not demonstrated a discriminatory motive or intent.

*(b) Pretext*

Defendants further contend that Boddy has failed to present evidence that would show that Defendants' proffered reason for her reassignment was false. Plaintiff has to show "that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual." *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995).

Boddy argues that there is evidence to demonstrate that Defendants' reasons for removal of her were pretextual and intentional discrimination. Boddy attended the daily briefing every day, while others did not. She completed a daily activity log every day the Strike Force used them during her tenure and worked approximately a forty hour week. Her case statistics were equivalent to or better than some of her male counterparts. She made at least three controlled buys even though they were with other agents' money and she referred one confidential informant to the Salt Lake Strike Force and was trying to develop more when she was removed.

However, it is indisputable that Boddy had performance problems. She has not submitted evidence that either Defendant did not truly believe that her performance was deficient. Boddy has no evidence to suggest that this evidence regarding her performance is merely a pretext for discrimination. Boddy had been cautioned about her performance before King even began at the Strike Force. Boddy states that King made a comment in their final meeting about women not making good Strike Force agents, but she did not include this in

17

her Charge of Discrimination with the UALD.  Boddy herself admits that she never developed a CI for the Task Force and never spent any buy money during her six-month assignment on the Strike Force.  There were also documented instances when nobody could find her and when she would leave for some reason and not return.  Without question, she was not doing satisfactory work on the Strike Force. This poor performance establishes a legitimate reason for removing Boddy from the Strike Force.

The court does not find that Boddy has produced enough evidence to create a genuine issue of material fact as to whether the employer's proffered reason for the challenged action is pretextual.  Because the court concludes that Boddy has not demonstrated a prima facie case of discrimination and had failed to create a material issue of fact with respect to pretext, the court also grants Defendants' motions for summary judgment on these grounds.

### B.  Hostile Environment

Boddy also fails to demonstrate a gender hostile working environment.  To meet the standard for a hostile environment, Boddy must "show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998).

In this case, Boddy admits that she has no complaints against Strike Force agents with regard to alleged gender discrimination.  Further, with regard to King, the only specific allegations she makes are that (1) he tossed his business card at her, (2) when she asked him about prosecuting minors, he flippantly told her that there was a form she should find and that she should figure it out, and (3) in her final meeting, he stated that women do not make good

18

Strike Force agents. However, these incidents do not demonstrate any kind of gender discrimination. They could have just as likely been directed at a man.

Besides King's statement to her face at the last meeting that females do not make good Strike Force agents, King allegedly coined the phrase "Debbie case" and used it regularly to all the male agents to ridicule and insult her. The derogatory statements were not made in her presence and there is no evidence that she knew of them. Another agent who was there once a week, heard King and other agents refer to Boddy in derisive terms even though they were not used to her face. Boddy was also the target of a prank. Someone put a snowball on the driver's seat of her car so that after she sat on it, it would look like she had wet her pants.

With respect to Ward, Boddy alleges only that his attitude toward her changed when she was put on probation. In her deposition, she responded "I don't know" to the question "Do you have any reason to believe that Brent Ward's dislike for you that you felt after you were put on the six week probation was based on anything other than his concern about your job performance?"

The alleged conduct is not severe or pervasive enough to reach the level required for a hostile work environment. Boddy has not established that her work environment was subjectively hostile. Statements made by agents outside of her presence do not create a hostile environment. The declaration about the comments made behind her back does not allege that Boddy was even aware of the statements. Plaintiff testified that she has no complaints against Strike Force agents other than defendants with regard to alleged gender discrimination. Therefore, the court concludes that Boddy's hostile environment claim also

fails. Accordingly, the court grants Defendants' motions for summary judgment on Boddy's hostile environment claim.

## Motions to Strike

Given the court's rulings on the motions for summary judgment, the court finds the motions to strike moot. But to the extent that the parties have moved to strike materials relied upon by the court, the motions are denied.

## CONCLUSION

Based on the above reasoning, Defendant Brad King's Motion for Summary Judgment is GRANTED, Defendant Brent Ward's Motion for Summary Judgment is GRANTED, Plaintiff's Motion to Strike Portions of Defendant King's and Ward's Summary Judgment Motions and Memoranda is MOOT IN PART AND DENIED IN PART, Plaintiff's Motion to Strike Portions of Defendants' Summary Judgment Reply is MOOT IN PART AND DENIED IN PART, Defendants' Motion to Strike Declarations of Lawrence Waggoner, Emily Bucevicius, and Ralph Jaramillo is MOOT IN PART AND DENIED IN PART, and Defendants' Motion to Strike Surreply Portion of Plaintiff's Brief is MOOT IN PART AND DENIED IN PART. Accordingly, this case is closed, each party to bear her and its own costs.

DATED this 24th day of September, 2007.

_____
DALE A. KIMBALL
United States District Judge